Kob
8/23/16

SRD USAO:2015R00185

FILED
U.S. DISTRICT COURT
DISTRICT OF ......

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AT BALTIMORE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| | * | DEPUTY |
| v. | * | CRIMINAL NO. _MJG-16-0422_ |
| | * | |
| KASSEM MOHAMMAD HAFEED, | * | (Food Stamp Fraud, 7 U.S.C. § 2024(b); |
| aka KASSAM MOHAMMAD HAFEED, | * | Wire Fraud, 18 U.S.C. § 1343; Aiding |
| | * | and Abetting, 18 U.S.C. § 2; Forfeiture, |
| Defendant. | * | 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. |
| | * | § 853, 28 U.S.C. § 2461(c)) |
| | * | |
| | * | |
| | * | |

*******

## INDICTMENT

### COUNT ONE
### (Food Stamp Fraud)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1.      Defendant **KASSEM MOHAMMAD HAFEED ("HAFEED")** was a resident of Baltimore, Maryland.

### The Food Stamp Program / Supplemental Nutrition Assistance Program

2.      Congress passed the Food Stamp Act of 1977, which was later renamed the Supplemental Nutrition Assistance Program ("SNAP"), in an effort to alleviate hunger and malnutrition.  The program used federal tax dollars to subsidize low-income households, which permitted those households to obtain a more nutritious diet by increasing the food purchasing power of eligible persons.  SNAP was jointly administered by the United States Department of

Agriculture ("USDA") and the Food and Nutrition Service ("FNS") together with various state agencies.

3.      Title 7 of the Code of Federal Regulations, Section 278.2(a), prohibited an authorized retail food store from accepting food stamp coupons in exchange for cash.  Further, Title 7 of the Code of Federal Regulations, Sections 278.2(a) and (h) provided that food stamp coupons may "only be accepted from eligible households or the households' authorized representative, and only in exchange for eligible food."   Title 7 of the Code of Federal Regulations, Section 271.2 provided that food stamp coupons included "an electronic benefit transfer card or personal identification number issued pursuant to the provisions of the Food Stamp Act of 1977, as amended, for the purchase of eligible food."

4.      In Maryland, SNAP was administered by the Maryland Department of Human Resources ("DHR") and was known as the Food Supplement Program ("FSP").   Maryland implemented FSP, funded by SNAP, through an Electronic Benefits Transfer ("EBT") system. FSP customers were issued plastic EBT Cards which contained an embedded magnetic stripe that stored basic information required for food purchases.  Retailers approved by FNS to accept SNAP were assigned an FNS authorization number and, in some cases, were provided with a point of sale ("POS") device to access the electronic funds allocated to customer's EBT Cards. POS devices communicated with the Maryland EBT central database to debit a customer's available SNAP benefit balance for the cash value of eligible food items purchased.

5.      Under the FSP, benefits were automatically added to a recipient's EBT Card on a monthly basis.  When an EBT Card was swiped through a retailer's POS terminal, the swipe caused an electronic transmission of information through a series of network switches to the central Maryland EBT database located in Texas, which contained customer account balance

2

information.  The EBT contractor verified the retailer was authorized to conduct SNAP EBT transactions.  The Maryland EBT system verified the amount of benefits available, authorized the transaction, and deducted the purchase amount from the customer's available balance.  The system also calculated cumulative FSP sales for each retailer and authorized electronic payments to the retailer's bank account.

6.     Once the EBT was approved, information flowed back to the POS terminal and the store employee received confirmation that the cardholder's account had been successfully debited.  FSP EBT transactions were made for the exact amount of the sale and no change was given to the cardholder.  SNAP reimbursements were paid to authorized retailers through a series of electronic funds transfers.  On a daily basis, the EBT contractor, located in Austin, Texas, reconciled accounts for participating SNAP retailers in Maryland.

7.     In order to participate in the SNAP as an authorized retailer, a business submitted FNS Form 252, Food Stamp Program Application for Stores to FNS.  As part of that application, the store owner/manager certified that they understood and agreed that "trade[ing] cash for Supplemental Nutrition Assistance Program benefits" was a "violation" of SNAP regulations.

8.     In order to receive SNAP reimbursements, authorized retailers were required to establish a single authorized bank account, approved by FNS, into which EBT benefits from legitimate food stamp transactions would be deposited.

## Food Stamp Transactions Conducted at 1400 West Lombard Street

9.     On or about August 16, 1999, an FNS Form 252 was submitted to FNS for N and M Grocery Store located at 1400 W. Lombard Street, Baltimore, Maryland.  In various locations on that application, **HAFEED** and his brother are each listed as owner.  **HAFEED** is separately

3

identified on the application as Store Manager. On or about September 9, 1999, N and M Grocery Store was licensed by FNS to participate in the food stamp program as a SNAP retailer.

10.   On or June 29, 2001, **HAFEED** signed a letter directed to the FNS Officer in Charge stating, in relevant part, "Please be advised that I, Kassam M. Hafeed, as owner of N and M Grocery Store, admit that I have been trafficking in Food Stamp benefits contained on the Maryland EBT card, and I have decided to voluntarily terminate my participation in the Food Stamp Program."

11.   On or about July 6, 2001, FNS permanently disqualified N and M Grocery Store from participating in the Food Stamp program.

12.   Articles of Incorporation for Yemen Grocery located at 1400 W. Lombard Street, Baltimore, Maryland were filed by **HAFEED** in August 2010, forfeited for failure to file a property return in October 2013, and revived again by **HAFEED** in December 2015.

13.   On or about October 20, 2010, Individual A submitted an FNS Form 252 for Yemen Grocery located at 1400 W. Lombard Street, Baltimore, Maryland in which Yemen Grocery was represented to be a sole proprietorship owned by Individual A. As part of the application, Individual A submitted a form certifying that he/she understood that it was a "violation" of SNAP regulations to "trade[] cash for Supplemental Nutrition Assistance Program benefits."

14.   On or about October 28, 2010, Yemen Grocery was licensed by FNS to participate in the food stamp program as a SNAP retailer.

15.   From in or about October 28, 2010 through at least August 3, 2016, **HAFEED**, and others redeemed and caused to be redeemed EBT benefits in exchange for cash in violation of the food stamp program rules and regulations. As a result of these unlawful cash transactions,

4

**HAFEED**, by and through others, received more than $1,532,642 in EBT deposits for food sales that never actually occurred or were substantially inflated. **HAFEED** knew that exchanging cash for EBT benefits was in violation of the laws, rules and regulations regarding the food stamp program and that he and others were consequently not entitled to the EBT deposits made by FNS into the Yemen Grocery accounts.

### The Charge

16.     On or about August 3, 2016, in the District of Maryland, the defendant,

### KASSEM MOHAMMAD HAFEED

did knowingly use, transfer, acquire and possess food stamp coupons, through an EBT Card, having a value in excess of $100 in a manner contrary to the Food Stamp Act (Title 7, United States Code Section 2011, et seq.) and the regulations issued pursuant to that program, to wit, **HAFEED** redeemed $103.75 in SNAP electronic benefits from an EBT Card ending in 4687 in exchange for cash at less than full value.

7 U.S.C. § 2024(b)(1)
18 U.S.C. § 2

## COUNT TWO
### (Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in paragraphs 1 through 15 of Count One of this Indictment are hereby realleged and incorporated by reference.

### The Scheme to Defraud

2.     Between on or about October 28, 2010 through at least August 3, 2016, in the District of Maryland and elsewhere, the defendant,

### KASSEM MOHAMMAD HAFEED,

along with others known and unknown to the grand jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions from SNAP, a federally funded national malnutrition program jointly administered by USDA and FNS, together with various state agencies ("the scheme to defraud").

### Object of the Scheme to Defraud

3.     It was the object of the scheme to defraud that **HAFEED** and others would debit funds from customers' EBT Cards and pay the individual who had presented the EBT Card in cash at less than full value.  Typically, **HAFEED** and others paid the individual who had presented the EBT Card approximately half of the value of the amount he/she had debited in cash.  By executing this scheme to defraud, defendant **HAFEED** received at least $1,532,642 in EBT deposits for food sales that never actually occurred or were substantially inflated.

**Manner and Means**

4.      It was part of the scheme to defraud that **HAFEED** created and caused to be created Yemen Grocery Corporation in Maryland for the purpose of operating Yemen Grocery, which participated in the SNAP program in Baltimore, Maryland.

5.      It was further part of the scheme to defraud that **HAFEED** and others, including Individual A, applied to participate in the SNAP program.

6.      It was further part of the scheme to defraud that **HAFEED** opened and caused to be opened bank accounts in the name of Yemen Grocery for the purpose of receiving SNAP benefits.

7.      It was further part of the scheme to defraud that **HAFEED** and others caused a SNAP-enabled EBT point of sale device in Maryland to electronically transmit interstate requests to authorize transactions and deduct amounts from the EBT Card available balances for unauthorized and unlawful purposes.

8.      It was further part of the scheme to defraud that **HAFEED** and others caused the Maryland EBT System (through the EBT contractor) to electronically transmit an interstate signal that authorized electronic payments to the bank accounts of Yemen Grocery, including Yemen Grocery.  Once the transaction was approved, information flowed back to the POS terminal confirming that the cardholder's account had been successfully debited.

9.      It was further part of the scheme to defraud that **HAFEED** and others falsely and fraudulently redeemed and caused to be redeemed from the United States government the full of amount of the EBT food stamp benefits charged on the EBT cards and caused this money to be deposited in bank accounts controlled by **HAFEED**.

## The Charge

10.     On or about August 3, 2016, in the District of Maryland, the defendant,

### KASSEM MOHAMMAD HAFEED,

for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, any writings, signs, pictures or sounds for the purpose of executing such scheme and artifice, that is, defendant knowingly used and caused to be used a point of sale device inside Yemen Grocery to redeem electronic benefits for unauthorized and unlawful purposes, which caused communications to be sent from a point of sale device in Maryland to Texas, to wit: **HAFEED** redeemed $103.75 in SNAP electronic benefits from an EBT Card ending in 4687 in exchange for cash at less than full value.

18 U.S.C. § 1343
18 U.S.C. § 2

8

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1.      Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, as set forth in Count Two of this Indictment, the defendant,

### KASSEM MOHAMMAD HAFEED,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c), any property, real and personal, which constitutes and is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the value of the proceeds of the scheme to defraud as described in Paragraph 2 of Count Two, which amount is at least $1,532,642.

### Substitute Assets

2.      If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture

of any other property of said defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

A TRUE BILL:

8-23-16
Date

**SIGNATURE REDACTED**

Foreperson